SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
UNITED STATES FIRE INSURANCE, A CRUM & FORSTER COMPANY, and RANDY DERR, in his INDEPENDENT CAPACITY, and DOES 1 through 10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Hoopes Vineyard, LLC

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

FILED
11/8/2021 9:24 AM
Clerk of the Napa Superior Court
By: Allison Hayes, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: Superior Court of California, County of Napa
*(El nombre y dirección de la corte es):*
Historic Courthouse
825 Brown Street
Napa, CA 94559

CASE NUMBER:
*(Número del Caso):*
**21CV001587**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jason O Balogh (238199)     (510) 473-2697; jbalogh@intelinklaw.com
INTELINK LAW GROUP, PC, 201 Mission Street, Suite 1200, San Francisco, CA 94105     Robert E. Fleshman

DATE: 11/8/2021                         Clerk, by  Allison Hayes                         , Deputy
*(Fecha)*                                *(Secretario)*                                   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* United States Fire Insurance, a Crum & Forster Company
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☒ other *(specify):* CCP 415.95 Business Organization Form Unknown
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

21CV001587
Napa - Civil
Delay Reduction Case

| | |
|---|---|
| 1 | Jason O. Balogh, Esq. (SBN 238199) |
| 2 | jbalogh@intelinklaw.com<br>**INTELINK LAW GROUP, PC** |
| 3 | 201 Mission Street, Suite 1200 |
| 4 | San Francisco, CA 94105<br>Tel: (510) 473-2697 |
| 5 | Fax: (858) 240-1460 |
| 6 | Samuel G. Royko (Pro Hac Vice Forthcoming) |
| 7 | sroyko@roykogroup.com<br>Mathew D. Dudek (Pro Hac Vice Forthcoming) |
| 8 | mdudek@roykogroup.com<br>Alyssa Friedman (Pro Hac Vice Forthcoming) |
| 9 | afriedman@roykogroup.com<br>**THE ROYKO GROUP, LLC** |
| 10 | 300 S. Wacker Drive, Suite 1700A<br>Chicago, Illinois 60606 |
| 11 | Tel: (312) 600-8105 |
| 12 | Attorney for Plaintiff |
| 13 | Hoopes Vineyard, LLC |

FILED
11/8/2021 9:24 AM
Clerk of the Napa Superior Court
By: Allison Hayes, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF NAPA

| | | |
|---|---|---|
| 17 | HOOPES VINEYARD, LLC, | Case No.: 21CV001587 |
| 18 | Plaintiff, | **COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF** |
| 19 | v. | |
| 20 | | 1. **BREACH OF CONTRACT** |
| 21 | UNITED STATES FIRE INSURANCE, A CRUM & FORSTER COMPANY, and | 2. **TORTIOUS BREACH OF CONTRACT** |
| 22 | RANDY DERR, in his INDEPENDENT CAPACITY, and DOES 1 through 10 | 3. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING** |
| 23 | | 4. **BAD FAITH** |
| 24 | **Defendants** | 5. **NEGLIGENT MISREPRESENATION** |
| 25 | | 6. **NEGLIGENT MISREPRESENATION**<br>7. **PROFESSIONAL NEGLIGENCE**<br>8. **DECLARATORY RELIEF** |

COMPLAINT

## INTRODUCTION

1.  Plaintiff, Hoopes Vineyard, LLC (hereinafter "Hoopes") is a Napa Valley winery that purchased an insurance policy from Defendant, United States Fire Insurance, a Crum and Forster Company (hereinafter "U.S. Fire"), which expressly protected Hoopes' grapes and wine from, among other perils, harm caused by smoke or contamination.

2.  In exchange for significant premiums, U.S. Fire issued an insurance policy that provided coverage for Hoopes' winery operations and products (the "Policy"). A true and correct copy is attached hereto as Exhibit "A". This Policy was in full effect at all relevant times.

3.  In October of 2017, massive wildfires devastated several counties in the Napa Valley region, emitting smoke and charred debris throughout Northern California that remained in the area for several months.

4.  Following the 2017 wildfire, Hoopes (through independent agencies) conducted multiple tests on the grapes that were subjected to the wildfire smoke. The results did not raise concerns of smoke taint or other quality concerns that would lead Hoopes to believe the grapes or wine had become contaminated.

5.  Hoopes also performed numerous tastings on its grapes and wine throughout their processing, including during the crush, fermentation, and aging stages and did not detect any smoke taint or other quality concerns.

6.  It was not until May of 2019, that Hoopes became concerned that wine made from the grapes harvested during the 2017 wildfires had become contaminated during the processing phase.

7.  Hoopes and its team of experts' concern arose out a smoke tainted flavor in the wine and was even described as tasting like an ashtray.

8.  Specifically, after the grapes were off the vine, and during the processing of Hoopes' wine, compounds that had not previously exhibited signs of smoke taint started to present as contaminated.

9.  Once the grapes were picked and processed, smoke from the winemaking process (often referred to as "smoke taint") infiltrated the wine and the product was subsequently

contaminated, resulting in substantial damages to the wine.

10. Hoopes was concerned that the contaminated wine could pose significant harm to Hoopes' brand and that it could not be used for its ultra-premium wines. Accordingly, Hoopes contacted U.S. Fire's agent that Hoopes had been working with, Randy Derr ("Mr. Derr"), and asked about potential insurance claims based on the possibility of smoke taint.

11. Mr. Derr failed to properly investigate the feasibility of Hoopes' potential claims and failed to provide a follow-up to Hoopes in expressing a final determination as to whether or not he believed Hoopes had a claim.

12. Hoopes first asked Mr. Derr if he thought there was a potential claim in May of 2019, and subsequently followed up with him over the course of the next several months.

13. Despite these attempts, Mr. Derr continued to tell Hoopes that he would get back to her.

14. In May of 2019, while awaiting a response from U.S. Fire and Mr. Derr, Hoopes began mitigating its damages by selling wine, that if untainted, would have otherwise been used for Hoopes' ultra-premium wine, on the bulk market for a mere fraction of the price Hoopes could have received. Hoopes also explored other innovative options, including using the damaged wine in brandy and other forms of alcohol, again, all in an attempt to mitigate its damages.

15. Additionally, as a result of the lack of response from Mr. Derr, Hoopes switched agents in July of 2019. After switching agents, Hoopes was informed that Hoopes should be covered under the existing policy.

16. As it became clear to Hoopes that the wine had become contaminated during the winemaking process, Hoopes filed a claim with U.S. Fire on February 7, 2020. As part of the claim, Hoopes provided U.S. Fire with all requested information, and fully cooperated with investigation of the claim.

17. On October 13, 2020, U.S. Fire denied Hoopes' claim.

18. Notwithstanding the broad coverage promised to Hoopes, U.S. Fire has failed to meet its obligations to indemnify Hoopes for damage to its products or pay the damages sustained as required under the Policy.

1   19.     Despite Hoopes' repeated attempts to resolve the claim, U.S. Fire has continued to
2   refuse to compensate Hoopes for losses expressly covered under the Policy.
3   20.     Hoopes now brings this action against U.S. Fire for its bad faith refusal to fulfill its
4   obligations pursuant to the terms of the Policy.

**PARTIES**

21.     At all relevant times, Plaintiff Hoopes Vineyard, LLC, was a limited liability company with its principal place of business in Napa County, California. Hoopes is a family controlled and operated winery and vineyard producing multiple tiers of wine, all crafted from grapes grown in California.

22.     Hoopes is informed and believes and thereupon alleges that, at all relevant times herein, Defendant United States Fire Insurance Company was a corporation formed and existing under the laws of the State of Delaware and was admitted and authorized to transact insurance business in the State of California.

23.     Hoopes is informed and believes and thereupon alleges that, at all relevant times herein, Defendant Randy Derr was an individual residing in the State of California and working as an agent of U.S. Fire.

24.     Plaintiffs are unaware of the true names and capacities, whether individual, corporate, agent, representative, or otherwise, of the Defendants named herein as Does 1-10 and therefore sue such Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that Does 1-10 are persons, corporations, partnership, or other entities that were agents of Defendants, or have directed, approved, committed, colluded with Defendants to commit, participated in, or added and abetted the acts and transactions alleged in this complaint. Each is therefore liable for the acts alleged in this complaint. The true names, capacities, and/or roles of Does 1-10 are unknown to Plaintiffs, and Plaintiffs will amend this complaint when their true names, capacities, and roles are known.

25.     Hoopes is informed and believes and thereupon alleges that, each of the Defendants was the agent, employee, joint venturer, parent, subsidiary, predecessor-in-interest, successor-in-interest, or affiliate of each and every other defendant and, in performing the acts

- 4 -
COMPLAINT

alleged, were acting within the course and scope of such position with the permissions, knowledge, assistance, and consent of one another.

## JURISDICTION AND VENUE

26. This Court has personal jurisdiction over Defendants U.S. Fire and Mr. Derr pursuant to California Code of Civil Procedure Section 410.10 as they were admitted and/or authorized to transact insurance business in the State of California.

27. This Court has subject-matter jurisdiction over the causes of action and violations alleged in this Complaint.

28. Venue is proper in this Court pursuant to California Code of Civil Procedure 395.5 because: (i) U.S. Fire issued a policy concerning property located in Napa County, California; (ii) Hoopes' loss occurred in Napa County, California; and (iii) Hoopes communicated with Defendants regarding losses under the Policy from its respective place of business in Napa County, California.

## FACTUAL BACKGROUND

### *Hoopes Vineyard and Wildfires*

29. Hoopes operates vineyards and winemaking operations in areas that were affected by the October 2017 wildfires that occurred in Napa, California.

30. As part of Hoopes' business operations, Hoopes purchases and grows grapes to produce ultra-premium wine.

31. While the vineyards themselves did not burn, Hoopes harvested its grapes as the wildfires swept through the area.

32. Shortly after the wildfires, in November of 2017 and then again in January of 2018, Hoopes had the wine tested by ETS Laboratories. The results led Hoopes and its team of experts to believe the grapes were not contaminated.

33. ETS laboratories is the country's leading independent wine testing laboratory with longstanding expertise in the field.

34. Hoopes additionally had the wine tested by Napa Wine Company.

35. Furthermore, Hoopes' employees and winemakers tasted and sampled grapes from

1  vineyards during the wildfires and did not taste any smoke taint or have any other quality
2  concerns.

### Hoopes' Discovery of Contamination

3  36. Over the passage of time, and during processing, compounds that had not
4  previously exhibited signs of smoke taint started to present as contaminated.

37. Specifically, in May of 2019, Hoopes became concerned that wine made from the grapes harvested during the 2017 wildfires had become contaminated during the processing phase as they exhibited an unpleasant taste.

38. Hoopes was concerned that the wine could have significant harm to Hoopes' brand if it was used for its ultra-premium wines.

39. On May 14, 2019, Hoopes contacted Mr. Derr, a broker and agent for Defendant U.S. Fire that was working with Hoopes and asked about potential insurance claims based on the possibility of smoke taint.

40. Mr. Derr failed to properly investigate the feasibility of Hoopes' potential claims and failed to provide a follow-up to Hoopes in expressing a final determination as to whether or not he believed Hoopes had a claim.

41. Hoopes first asked Mr. Derr if he thought there was a potential claim in May of 2019, and subsequently followed up with him over the course of the next several months. However, despite these attempts, Mr. Derr continued to delay Hoopes by telling her that he would get back to her.

42. As a result of the lack of response from U.S. Fire and Mr. Derr, Hoopes immediately began mitigating its damages by selling wine, that if untainted, would have otherwise been used for Hoopes' ultra-premium wine, on the bulk market for a mere fraction of the price Hoopes could have received. Hoopes also explored other innovative options, including using the damaged wine in brandy and other forms of alcohol, again, in an attempt to mitigate damages.

43. Additionally, as a result of the lack of response from Mr. Derr, Hoopes switched agents in July 2019. After switching agents, Hoopes was informed that it should be covered under

- 6 -
COMPLAINT

the existing policy.

44.     As it became clear to Hoopes that the wine had in fact become contaminated during the winemaking process, Hoopes filed a formal claim with U.S. Fire on February 7, 2020, for six lots of wine, totaling 7,461 gallons.

45.     Hoopes provided U.S. Fire with all the information it requested, and fully cooperated with U.S. Fire's investigation of the claim.

46.     Given the coverage afforded under the Policy, U.S. Fire should have promptly acknowledged its full payment obligations in connection with the claim.

### *U.S. Fire's Investigation and Erroneous Denial of Hoopes' Claim*

47.     Following Hoopes' claim, U.S. Fire conducted an investigation.

48.     As part of the investigation, U.S. Fire hired Tom Eddy ("Mr. Eddy"), a wine "consultant", to assist with Hoopes' claim.

49.     Mr. Eddy is a paid expert who has continuously made inconsistent statements in the media about his findings.

50.     Mr. Eddy issued a report stating Hoopes should have known that the grapes could become contaminated, despite the fact Hoopes acted within industry standards in continuing to process the grapes after having conducted multiple tests shortly following the 2017 wildfires.

51.     Based on the findings and "opinion" of Mr. Eddy, U.S. Fire wrongfully concluded that there was no evidence that any damage occurred to the subject wine lots after the grapes were harvested.

52.     On October 13, 2020, U.S. Fire, declined coverage for Hoopes under the Policy.

### *The Insurance Policy*

53.     The insured interest and the subject matter under the Policy extend to "picked or crushed grapes, wine in-process, wine in any state of fermentation, bottled wine, and wine in cooperage." *See* Exhibit A, at Section II, subsection H.

54.     Hoopes' damaged wine should have been covered under this subsection.

55.     Additionally, the Policy covers "loss of or damage to wine stock whether finished or in-process, caused by 'contamination'." *See* Exhibit A, at Section II, subsection L.

56. "Contamination" is defined under the Policy as "any impurity caused by contact or mixture with a foreign substance."

57. Over the passage of time following the 2017 wildfires, and during the processing of Hoopes' wine, compounds that had not previously exhibited signs of smoke taint started to present as contaminated.

58. In contrast to U.S. Fire's claims, it was only after the grapes were processed that they became contaminated, and it was only then that Hoopes could have discovered such contamination.

59. Hoopes used scientific laboratory test results from ETS Laboratories, sensory analysis tests conducted by Hoopes' winemakers, and industry standards in determining that the wine was not contaminated immediately following the 2017 wildfire. Hoopes did not know, nor could have reasonably known of the damages until Hoopes reached out to U.S. Fire's agent and broker to inform him of possible quality issues.

60. In its denial of coverage, U.S. Fire focused on Hoopes' failure to retain holdback samples of its wines.

61. However, holdback samples were not kept by Hoopes as Hoopes is unable to store samples for any definite period, as mold would have formed and ruined the samples, and thus, such samples would have naturally become tainted.

62. On May 14, 2019, Hoopes first reported the possibility of a claim to Mr. Derr. At that time, the U.S. Fire could have inspected Hoopes' wine.

63. However, U.S. Fire never inspected Hoopes' wine, nor did U.S. Fire ever request to inspect Hoopes' wine until months after Hoopes had placed its formal claim.

64. Additionally, Mr. Eddy made comments in the media that are directly contrary to his findings with regards to the Hoopes' investigation.

65. Hoopes made repeated requests for U.S. Fire to reconsider its unreasonable interpretation of the Policy's coverage and unsupported factual assertions. In addition, Hoopes has provided all appropriate evidence to document its loss and the damage to Hoopes' wine.

66. Hoopes has paid all applicable premiums under the Policy and complied with all

- 8 -
COMPLAINT

1  applicable conditions precedent contained in the Policy.

2        67.    Under California law and applicable regulations, U.S. Fire is obligated to conduct
3  a full, fair, prompt, and thorough investigation of all the bases of losses claimed under its policies.
4  To date, and based upon its conduct, U.S. Fire has failed to do so.

5        68.    Additionally, U.S. Fire is obligated to conduct a non-biased investigation and
6  honestly select outside investigators and expert consultants to conduct a fair and reasonable
7  investigation. To date, and based upon its conduct, U.S. Fire has failed to do so.

8        69.    Under California law and applicable regulations, U.S. Fire is obligated to
9  diligently search for and consider evidence that supports coverage of losses claimed under its
10 policies and is prohibited from taking any action that would impair Hoopes' rights to receive the
11 benefits for which it contracted. To date, and based upon its conduct, U.S. Fire has failed to do so.

12       70.    Thus, U.S. Fire has not acted in accordance with California law and applicable
13 regulations with regards to the claim placed by Hoopes.

14       ***There is No Reasonable Basis for U.S. Fire's Denial***

15       71.    U.S. Fire does not dispute that Hoopes' wines have been damaged by smoke taint.
16 However, U.S. Fire's denial improperly attempts to rewrite the scope of coverage under the
17 Policy and shift the burden to Hoopes to prove the smoke taint damage occurred only after the
18 grapes were harvested and delivered to Hoopes. *See* Denial Letter, attached hereto as Exhibit "B".

19       72.    U.S. Fire was required to conduct a reasonable, fair, and even-handed evaluation
20 of Hoopes' claim for coverage. However, in conscious disregard of Hoopes' rights, U.S. Fire has
21 failed to conduct a fair and reasonable results-driven investigation and refused to pay Hoopes'
22 claim.

23       73.    U.S. Fire has unreasonably deprived Hoopes of insurance benefits to which it is
24 entitled by purposefully: (i) failing to give at least equal regard to Hoopes' interests in being
25 made whole under the policy as U.S. Fire did to its own interests in attempting to avoid the cost
26 of fulfilling this obligation; and (ii) disregarding its obligation to refrain from doing anything that
27 would frustrate the agreed upon purposes of the Policy.

28       74.    A reasonable insurer presented with Hoopes' claim for coverage would have, long-

1  ago, agreed to pay Hoopes in connection with the coverage afforded by the Policy, but U.S. Fire
2  has wrongfully refused to honor its obligations with a reckless disregard for Hoopes' rights.

3      75.    Hoopes contends that U.S. Fire's unreasonable course of conduct with respect to
4  its claim represents a policy and practice, knowingly and willfully calculated to frustrate the
5  agreed upon purposes of, and injure, Hoopes' rights to receive the benefits of the Policy to further
6  U.S. Fire's own economic interests in avoiding its coverage obligations to its insured and
7  minimizing the ongoing exposure for the 2017 wildfires.

8      76.    Accordingly, U.S. Fire has exposed Hoopes to severe damage and expense by
9  forcing Hoopes to bear the impact of the significant losses caused by the 2017 wildfires, for
10 which she should have been covered.

11     77.    In addition to the unreasonable conduct described above, Hoopes is informed and
12 believes and thereupon alleges that, U.S. Fire may have further breached its duty of fair dealing
13 and good faith by other acts or omissions that Hoopes has not yet discovered.

### FIRST CAUSE OF ACTION

**(Breach of Contract – Against U.S. Fire and Does 1-7)**

16     78.    Hoopes repeats and incorporates by reference the preceding allegations of this
17 Complaint as if fully set forth herein.

18     79.    The Policy constitutes a valid and enforceable agreement.

19     80.    Hoopes has timely performed all conditions required under the Policy.

20     81.    U.S. Fire has breached its obligations under the Policy by refusing to pay for a
21 covered loss associated with Hoopes' wine.

22     82.    As a direct and proximate result of U.S. Fire's breach, Hoopes has sustained
23 damages which will total more than $2,000,000, the exact amount which will be proven at trial.

### SECOND CAUSE OF ACTION

**(Tortious Breach of Contract – Against U.S. Fire and Does 1-7)**

26     83.    Hoopes repeats and incorporates by reference the preceding allegations of this
27 Complaint as if fully set forth herein.

28     84.    Every insurance contract inherently places the insurer and insured in unequal

1  bargaining positions.

2  85.  Hoopes' motivation for entering the Policy with U.S. Fire was for security and
3  future protection in the event of damage, such as the damage that was caused by contamination of
4  the grapes following the 2017 wildfires.

5  86.  Hoopes cannot recover adequate contract damages because of the various damages
6  Hoopes suffered, including, but not limited to, damage to the brand and Hoopes' inability to offer
7  ultra-premium wine to its members and customers.

8  87.  Hoopes was the vulnerable party in acquiring insurance for future protection and
9  necessarily then placing full trust in U.S. Fire to perform its obligation in paying insurance
10 proceeds in the event of damage.

11 88.  U.S. Fire is aware of Hoopes' vulnerability in relying on being covered for what
12 Hoopes believed would be covered under the Policy.

13 89.  As a direct and proximate result of U.S. Fire's breach, Hoopes has sustained
14 damages in excess of $2,000,000 the exact amount which will be proven at trial.

15 **THIRD CAUSE OF ACTION**

16 **(Breach of Covenant of Good Faith and Fair Dealing – Against U.S. Fire and Does 1-7)**

17 90.  Hoopes repeats and incorporates by reference the preceding allegations of this
18 Complaint as if fully set forth herein.

19 91.  Every insurance contract contains an implied covenant of good faith and fair
20 dealing which obligates the insurer to do nothing that would unfairly deprive the insured of the
21 contract's benefits or place its interests above the interests of the insured.

22 92.  U.S. Fire has breached the implied covenant of good faith and fair dealing by
23 engaging in the following conduct, without limitation:

   a. Refusing to pay Hoopes for losses expressly covered by the Policy;

   b. Ignoring applicable California insurance law and principles in deciding to deny coverage, such as the manifestation of loss rule;

   c. Intentionally or carelessly misconstruing, misapplying, and misrepresenting applicable principles of insurance law to justify U.S. Fire's decision to deny coverage to Hoopes;

- 11 -
COMPLAINT

d.  Failing to properly investigate, evaluate, and consider Hoopes' theories of liability under the Policy;

e.  Improperly giving greater weight to U.S. Fire's own interest in avoiding coverage obligations than the interest of Hoopes in a prompt and complete resolution of its claim;

f.  Failing to utilize unbiased outside investigators and consultants in evaluating Hoopes' claim; and,

g.  Unreasonably exposing Hoopes to significant additional expenses by requiring Hoopes to engage in this litigation to recover benefits duly owed it under the Policy.

93.  By engaging in such conduct, U.S. Fire placed its own interests above those of Hoopes, its insured, and thereby wrongfully deprived Hoopes of rights and withheld benefits owing to Hoopes under the Policy.

94.  As a proximate result of U.S. Fire's breach of its duty to deal fairly and in good faith, Hoopes has incurred, and will continue to incur, substantial damages, including without limitation costs and attorneys' fees, the exact amount of which will be proven at trial.

95.  U.S. Fire's conduct was performed with conscious disregard of Hoopes' rights, thereby justifying an award of punitive damages against U.S. Fire in an amount sufficient to punish U.S. Fire for the severity of its conduct and to make an example of U.S. Fire to deter others from engaging in such conduct in the future.

### FOUTH CAUSE OF ACTION

**(Bad Faith – Against U.S. Fire and Does 1-7)**

96.  Hoopes repeats and incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

97.  Every insurance contract contains an implied covenant of good faith and fair dealing which obligates the insurer to do nothing to unfairly deprive the insured of the contract's benefits or place its interests above the interests of the insured.

98.  U.S. Fire withheld benefits due under the Policy and such withholding was

1   unreasonable without proper cause.

2         99.    U.S. Fire's denial of Hoopes' claim due to alleged delay and failure to holdback
3   samples was unreasonable and without proper cause.

4         100.    U.S. Fire's wine "consultant" Mr. Eddy was not an unbiased or impartial third-
5   party. U.S. Fire's reliance on his opinion was contrary to the agreed upon industry standards in
6   determining whether to deny coverage to Hoopes.

7         101.    U.S. Fire's unreasonable course of conduct with respect to Hoopes' claim
8   represents a policy and practice, knowingly and willfully calculated to frustrate the agreed upon
9   purposes of, and injure, Hoopes' rights to receive the benefits of the Policy to further U.S. Fire's
10  own economic interests in avoiding its coverage obligations to its insured and minimizing the
11  ongoing exposure for the 2017 wildfires.

12        102.    As a proximate result of U.S. Fire's breach of its duty to deal fairly and in good
13  faith, Hoopes has incurred, and will continue to incur, substantial damages, including without
14  limitation costs and attorneys' fees, the exact amount of which will be proven at trial.

15        103.    U.S. Fire's conduct was performed with conscious disregard of Hoopes' rights,
16  thereby justifying an award of punitive damages against U.S. Fire in an amount sufficient to
17  punish U.S. Fire for the severity of its conduct and to make an example of U.S. Fire to deter
18  others from engaging in such conduct in the future.

### FIFTH CAUSE OF ACTION

(Negligent Misrepresentation – Against U.S. Fire and Does 1-7)

21        104.    Hoopes repeats and incorporates by reference the preceding allegations of this
22  Complaint as if fully set forth herein.

23        105.    U.S. Fire misrepresented to Hoopes that Hoopes would be protected for the type of
24  damages that occurred.

25        106.    U.S. Fire had no reasonable basis to represent to Hoopes that this type of claim
26  would be covered by the Policy if U.S. Fire did not in fact plan to cover such claim.

27        107.    U.S. Fire intended to induce Hoopes' reliance on the fact that all fire and smoke
28  contamination would be covered under the Policy when Hoopes entered the Policy.

108. Hoopes relied on this misrepresentation when entering the Policy.

109. Hoopes has suffered losses by way of justifiable reliance when the claim was not covered by U.S. Fire.

## SIXTH CAUSE OF ACTION

### (Negligent Misrepresentation – Against Randy Derr and Does 5-10)

110. Hoopes repeats and incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

111. Defendant Mr. Derr misrepresented to Hoopes that he was unsure if there was a basis for bringing a claim under the Policy.

112. Mr. Derr had no reasonable grounds to believe the guidance he provided to Hoopes to be true.

113. In addition, Mr. Derr did not take reasonable steps to determine if a claim could be brought under the Policy.

114. Mr. Derr intended to induce Hoopes reliance on his guidance, or lack thereof, as to whether Hoopes should make a claim under the Policy.

115. Hoopes justifiably relied on the misrepresentation by not taking immediate steps to file a subsequent claim with U.S. Fire after first reaching out to Mr. Derr to obtain his opinion.

116. Hoopes has suffered losses by way of its justifiable reliance on Mr. Derr's communications by not placing a claim under the Policy sooner.

## SEVENTH CAUSE OF ACTION

### (Professional Negligence – Against Randy Derr and Does 5-10)

117. Hoopes repeats and incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

118. Mr. Derr had a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise.

119. Mr. Derr did not provide a proper evaluation of Hoopes' potential claim under the Policy.

120. Mr. Derr failed to inform Hoopes that a claim should be brought under the Policy.

- 14 -

COMPLAINT

121. As such, Mr. Derr breached his duty to Hoopes.

122. Mr. Derr's conduct was a proximate cause for Hoopes not to place a claim with U.S. Fire in May of 2019 and therefore, U.S. Fire did not inspect Hoopes' grapes at that time.

## EIGHTH CAUSE OF ACTION

### (Declaratory Relief – Against U.S. Fire and Does 1-7)

123. Hoopes repeats and incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

124. An actual controversy currently exists between Hoopes and U.S. Fire regarding U.S. Fire's obligations under the Policy.

125. Hoopes contends that the damage to its wine associated with smoke taint, which first manifested in 2019, is a covered loss and should be compensated under the Policy.

126. Defendant U.S. Fire contends that it is not obligated to compensate Hoopes for such loss.

127. Hoopes desires a judicial determination and declaration that U.S. Fire is obligated under the Policy to compensate Hoopes for loss or damage to the grapes from the 2017 wildfires.

128. A judicial declaration is necessary and appropriate at this time because Hoopes and U.S. Fire have failed to reach an agreement on the scope of U.S. Fire's obligations under the Policy.

**WHEREFORE**, Plaintiff Hoopes Vineyard, LLC prays for judgment against Defendants, and each of them as follows:

1. On the First Cause of Action, for an award of compensatory damages in an amount to be proven at trial.

2. On the Second Cause of Action, for an award of compensatory and exemplary damages in an amount to be proven at trial, including attorneys' fees allowed by law.

3. On the Third Cause of Action, for an award of compensatory and exemplary damages in an amount to be proven at trial, including attorneys' fees allowed by law.

4. On the Fourth Cause of Action, for an award of compensatory and exemplary damages in an amount to be proven at trial, including attorneys' fees allowed by law.

5. On the Fifth Cause of Action, for an award of compensatory and exemplary damages in an amount to be proven at trial, including attorneys' fees allowed by law.

6. On the Sixth Cause of Action, for an award of compensatory and exemplary damages in an amount to be proven at trial, including attorneys' fees allowed by law.

7. On the Seventh Cause of Action, for an award of compensatory and exemplary damages in an amount to be proven at trial, including attorneys' fees allowed by law.

8. On the Eighth Cause of Action, for an order declaring that Defendant U.S. Fire is obligated to compensate Plaintiff for its loss under the Policy.

9. On all Causes of Action, for such other relief as the Court may deem just and proper.

DATED: November 5, 2021

INTELINK LAW GROUP, PC

BY: _____
Jason Balogh
Attorney for Plaintiff
Hoopes Vineyards, LLC